Raniere v. Microsoft Corporation 2016, 1698, and 99. Mr. Crockett. Good morning, Your Honors, members of the panel, and if it may please the Court, I'd like to begin with a comment on the standing issue. I'm perfectly capable of addressing any comments or questions the Court may have about the abuse of discretion, the discovery and the contempt issues. Well, good, good. At page 18 in your blue brief, you say at the bottom of that page, at the dismissal hearing and as a surprise, the District Court called upon Raniere to testify and then made findings of his dishonesty and that Raniere had violated several orders and was a consummation. And in footnote 9, you say more precisely the District Court ordered that if Raniere wanted to offer documents to oppose the motion to dismiss, he had to authenticate them in person. He appeared at the hearing to do so, but the defendants then stipulated authenticity, whereupon the District Court asked Raniere to testify generally, and you cite to the appendix. So, I'm looking at it, and it appears to me that what actually happened was that you arrived at the hearing with a set of exhibits entitled Plaintiff's Duplicate Exhibits to be Offered during Raniere's examination March 1, 2016. That's at 2664. The District Court judge remarks, you were very optimistic and that you already had this prepared, assuming I was going to grant your request to examine Mr. Raniere. That's at 2664-265. You requested that Mr. Raniere be allowed to testify when you stated at 2661. I would submit, Your Honor, that I have Mr. Raniere here ready to, and the court interrupts and says, let me ask a couple of questions. And then the court allowed Mr. Raniere's testimony directly over the objection of the appellees at 2660-263. In light of what I just read to you, how do you justify the statement and the footnote in the blue brief? The exhibits that were prepared and presented to the court were the ones that the court requested authentication of. In other words, a lot happened before we got there. All the court was willing to permit him to do, pursuant to prior court order, was permit him to come and authenticate documents. So the set of exhibits were the documents that were requested to be authenticated. You are correct that, Your Honor, is correct that at that point in time, the court encouraged the parties to stipulate to authenticity. They did, and further at that point in time, I then made a decision to request the court to permit Mr. Raniere to testify as to those documents. I put them up. But the district court didn't believe any of his testimony, and it noted that all the documents purporting to give him standing and ownership or entitlement to speak for the corporation were missing. That led to the finding of lack of standing, lack of documents, and lack of credibility. That's all correct. And so what's your argument? The argument is that one cannot defeat standing on the basis of irrelevant collateral information in an irrelevant collateral attack. Doesn't standing have to be positively shown? That is correct, but the standing that was positively shown was on the basis of the assignment document, which was facially valid. There was nothing wrong with the face of the assignment itself. It was executed by Mr. Raniere. He owned the corporation. Whether he owned 70% or 100%, he owned the corporation. So the question thus becomes, the fundamental question is, whether the district court was justified in conducting a thorough collateral attack or permitting a thorough collateral attack on the corporate documents that led up to the assignment. In other words, Mr. Raniere had difficulty recalling the circumstances of the assignment or the corporate actions leading up to the assignment. He formed the corporation. He was the driving force behind it. He paid for it with funds that were subject to his direction. He did everything. He was the inventor. He did everything to bring about the prosecution of the patent and to pursue it to a lawsuit. The court had the opportunity to observe the demeanor of the witness and to determine, based on that observation, the credibility of the witness. And the court found that Mr. Raniere was dishonest. Correct. But the credibility issue was on a collateral matter that was irrelevant to the action, Isn't there a doctrine, it's been 45 years or so, I don't know, a long time since law school, falso in unis, falsus in omnia. Correct, but in this case, as we cite in our reply brief, it's that tautology cannot apply, should not be applied here, because the credibility determination was obtained as a means to shield the court from appellate review on the important issues of the actual patent itself. If counsel makes a misrepresentation to me in a brief, don't I have the ability to just say, well, nothing in here is true? Your Honor, you do. However, in this case, the misrepresentation attributed to Mr. Raniere was on a wholly collateral matter. If this court were to permit a collateral challenge to assignment documents, to documents of title, then it would be, well, to give you an example, to give Your Honor an example, in state title cases involving real property, one can imagine the havoc that would occur if a title insurance company were to issue a policy of title insurance on a policy, on a real estate, and somebody said, well, the corporate authorizations leading up to the grant deed were insufficient and inadequate. So the court was focusing its examination on those collateral corporate matters, on what happened to lead to the resolution assigning the property, assigning the interest to Mr. Raniere. That's what the court focused on, but they were irrelevant. So it would be an abuse of discretion, and it would be a matter of, an error of law, really, to focus upon the credibility determination that was made on matters that should never have been before the court in the first place. So I would urge the court under the thinking of this court's Gaia decision and the Fifth Circuit's Renegal decision to not permit this court's decision to turn upon collateral matters. And when Mr. Raniere was offered up to testify at trial, he was there only because the court told him the only thing he could do was to authenticate documents. He couldn't submit a declaration. He couldn't submit the declarations of any other person. That's all he was permitted to do. And so when we get there, and the court permits the admissibility of the documents, well, we could tell the court wanted him to testify, and we put him up. And that is accurate. And if the brief is inaccurate on that part, you have my apologies, Your Honor. Well, is it not inaccurate? It is not inaccurate. The brief is not inaccurate? No. Your Honor's recitation of the facts are accurate. And if my brief on that point is inaccurate... I'm not saying if. I don't want an if. It is inaccurate. And that being the case, Your Honor, I would urge the court to look at the realities of the standing issues. And that is, one cannot attack standing on a titular document by unraveling or challenging the shareholder relationships. And that was all he was examined on. He wasn't examined on any other point. And so to the extent that that is a concern to the court, and it is, I would urge the court not to use that particular issue against my client, since it's an irrelevant issue. I'd like to reserve, if I might. We will do that. Mr. Trella? Thank you, Your Honor. May it please the court, there is nothing collateral at all about what happened in the district court. If the view of the law that you just heard were right, nothing would stop me from throwing together a set of documents that says, I own a controlling interest in Apple. I hereby name myself chairman. Yes, it would. You're a member of the bar. You're bound by ethical standards. Well, let's put that to one side. Let's assume that I wasn't bound. I elect myself chairman, and I hereby assign all of Apple's patents to me. That's what Ranieri did here. Now, he did it for GTI and not Apple, so it was less transparently ridiculous, but it was no more legitimate than if I had done it for myself for Apple. Now, this wasn't lost on Judge Lynn. She said, and this is at 2768 of the appendix, so all of a sudden Mr. Ranieri surfaces, says he's a sole stockholder, assigns everything to himself. Are you telling me the court is just stuck, that nobody can evaluate whether that's true, because he has a document that looks like an assignment? Well, counsel, of course, said no. He had to say no, and he went on to wholeheartedly agree that the question whether Ranieri actually owned GTI stock was a proper area of inquiry for the court. In fact, he told Judge Lynn that her question is, quote, so on point and gets to the heart of the issue. Well, of course it did. In fact, a couple of weeks before in a brief he filed in January, this is at appendix 1609, he said, and this is a quote, if he, that is Ranieri, didn't own GTI, he couldn't transfer himself the patents in suit. Well, of course he couldn't. So that was the core issue. It's not collateral. It goes to the heart of whether there is a facially valid assignment, whatever that means. It can't mean a piece of paper that somebody just writes up and says he owns everything. Then facially valid has no meaning at all. And when Judge Lynn- Leaving aside whether it was fraudulent in the first place. Well, yeah, there are a whole bunch of issues that would arise that we don't even need to get into. And the other thing is here, there's a suggestion in the brief certainly, and I think Mr. Crockett suggested it here too, that Judge Lynn was getting tangled up in corporate formalities and that sort of thing. She didn't require that there be transfers in writing, even though the GTI bylaws required it. But she did comment that, well, it seems sort of odd that there are all these things that are supposed to be done in writing. There are no documents that support any of it. The only documents that do show up here say that he was not a shareholder and contradict his story. And she actually asked counsel, doesn't this go to credibility? And he wholeheartedly agreed. Well, yes, it does go to credibility, and that's a very important province for the court, especially today. That's what he said. And so, again, I don't want to beat a dead horse, but as I've said, there's nothing collateral here. This went to the core of whether there was any assignment here. The judge found on a compelling record that he had not established ownership of a single share of GTI stock, so the documents he executed in December were false. They actually were knowingly false, so her finding of contumacious conduct and perjury was entirely justified, as was the dismissal. I don't want to take any more time at this point in the morning if the court doesn't have any questions. Thank you, Your Honors. Thank you, Mr. Trell. Mr. Crockett has almost five minutes if he needs it. Thank you, Your Honor. This wasn't a stranger to the corporation. This was the former, the person who formed the corporation. Most of the documents of formation require his signature, require his approval. He was the primary inventor. He had the technical capacity and ability to create this patent. He was not a complete stranger who suddenly shows up and says, I've got an assignment of all of Ford's interest in this particular corporation. This person, Mr. Ranieri, had all the indicia necessary for title, and when the court looks at the Renegal decision, which the defendants really get wrong in their brief, and they miscite it very improperly. But when you look at the Renegal decision, in the Renegal decision a series of mortgages were assigned to Deutsche Bank, and in one assignment a contractor lied and said, I'm the vice president of Deutsche Bank, or I'm the vice president of Asinor, and I make this assignment to Deutsche Bank. And the mortgagee, or the borrower challenged that and said, that's a lie and that's a forgery, and there are difficulties with the acknowledgment, the notarization here, because this document was not signed. It was scanned. It was robo-signed, and the notarization is false. And the court said, notwithstanding that lie and notwithstanding the lie on the acknowledgment, that sort of relationship between Asinor and Asinie cannot be unwound by the borrower. That's a matter that's wholly irrelevant, and the plaintiff lacks standing to make that argument, and that's the kind of argument that is being made here by the defendants. Now, it's not technically a standing argument. It's a relevance argument, because they're defendants. They're not plaintiffs. And in none of their cases do they cite any decision which permits this kind of collateral attack on the face of the assignment. So notwithstanding Mr. Ranieri supposedly lying on the stand about 100% ownership versus 70% ownership of the corporation, that's all that he was really found in difficulty of. The district court had problems with him asserting that he had 100% when he really had 70%. No, that's not the way the district court put it. He was a liar. That's true. That's what he said. That's what she said. It's not that she had problems with 70% versus 100%. It was that he was a liar on the stand, and she refused to accept the veracity of his testimony. Yes, that is correct. That was a finding. That is correct, and the lie pertained to the corporate resolution that was executed in 2014 that said I own 100% of GTI when in fact he owned only 75% beneficial to his girlfriend, but he explains in the transcript that the reason why I signed that is because the persons who owned the other 25%, they prepared this document for me to sign. So I didn't consider it a lie. I said, hey, if they want me to sign this document saying that I own 100% and it's against their interest, I will sign that document. That was his explanation. And that's not conscious. It was unbelievable, according to him. That's what the court said. And I would urge this court not to defer to that determination because it was on a collateral matter that should never have been considered by this court, by that court. Thank you, Mr. Crockett. We'll take the case under advisement. All rise.